# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH G. GEESEY and WENDY    )
GEESEY,                         )           CIVIL ACTION NO. 3:14-188
                      Plaintiffs,    )
                                )           JUDGE KIM R. GIBSON
        v.                  )
                                )
CITIMORTGAGE, INC.,          )
                                )
                    Defendant.    )

## MEMORANDUM OPINION AND ORDER OF COURT

### I. Introduction

Presently before this Court is Defendant's Motion to Dismiss for Failure to State a Claim. ECF No. 7. Defendant moves to dismiss with prejudice Plaintiffs' Complaint. *Id*. For the reasons that follow, the Court will grant in part and deny in part Defendant's motion to dismiss.

### II. Jurisdiction

The Court has jurisdiction over all of the parties' claims pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs. This case was filed originally in the Blair County Court of Common Pleas, but Defendant removed it to this Court pursuant to 28 U.S.C. § 1441(b).

1

**III. Factual background**

The facts as pleaded in the Complaint are as follows.

In 2007, the Plaintiffs, Kenneth and Wendy Geesey, secured a mortgage on their home. Originally, the loan was with PNC Bank, but the loan was assigned to Defendant CitiMortgage shortly thereafter. ECF No. 2-2 at ¶ 3.

Immediately after the mortgage was assigned to CitiMortgage, Plaintiffs inquired about modifying their loan. *Id*. They were told that they were not yet eligible for a loan modification and would have to wait one year before a loan modification would be considered. *Id*. Plaintiffs again contacted Defendant in late Summer of 2009 to request a loan modification. *Id*. at ¶ 4. An agent of Defendant told Plaintiffs that they would not be eligible for a modification unless they were three months behind on their payments. *Id*. Although they were current with their payments at that time, Plaintiffs intentionally defaulted on their mortgage payments for three months, at which time they again contacted CitiMortgage to request a modification. *Id*.

In early October of 2009, Plaintiff Kenneth Geesey spoke to Nancy, an agent of CitiMortgage, who explained that Plaintiffs were being placed into the "HAMP" Program. Nancy told Geesey that this would lower his interest rate to 4.00% and that it would begin on November 1, 2009. *Id*. at ¶ 5. On October 16, 2009, Plaintiff Kenneth Geesey spoke to Tracey, another agent of Defendant, who reaffirmed the Geesey's placement into the HAMP program with the same terms that Nancy had articulated. *Id*. at ¶ 6. On October 28, 2009, Plaintiff spoke to Delynn, another agent of Defendant, who

expressed a new modification offer with an interest rate of 5.20% that would begin on December 1, 2009. *Id*. at ¶ 7. Lastly, on October 30, 2009, Plaintiff spoke to Roshanda, another agent of Defendant who first confirmed the modification offered by Delynn, but then later retracted that offer, stating that there was a problem with Plaintiff's second mortgage. *Id*. at ¶ 8. Plaintiffs do not have a second mortgage on their home. *Id*.

Having learned that they were no longer eligible for a loan modification from CitiMortgage, Plaintiffs then, through their attorney, Michael Emerick, sent a letter to Defendant. *Id*. at ¶ 9. This letter stated, in relevant part, "Enclosed please find my clients' check in the amount of $1,591.40. This represents the amount of the original modification agreement which Citi ultimately reneged upon. Your cashing of this check will represent Citi's acceptance of the modification of the Geeseys' mortgage. Do not cash this check unless Citi agrees to the same." *Id*. at Ex. A. Defendant cashed the check that was enclosed with the letter in the amount of $1,591.40. *Id*. at 9-10. Plaintiffs continued to make monthly payments on unspecified dates in unspecified amounts for the next five months. *Id*. at 10. In the sixth month, Plaintiffs received a returned check in the amount of $1,196.09 and a letter from CitiMortage, stating that it would not accept the payment because it was not sufficient. *Id*. at 10, Ex. B. The letter also demanded the sum of $13,651.36, which included late charges. *Id*.

In July of 2010, CitiMortgage assigned Plaintiffs' mortgage to Selene Finance LP. *Id*. at ¶ 11. Plaintiffs immediately requested modifications from Selene Finance, LP, but Selene Finance, LP was unable to offer a reasonable or sustainable loan modification to

Plaintiffs and a foreclosure action was filed. *Id*. Plaintiffs filed the Complaint on July 30, 2014, claiming that as a result of the circumstances described in this section, they have been put in imminent danger of losing their home, have suffered catastrophic damage to their credit, have lost significant income from lost business opportunities, and have suffered health problems from severe stress. *Id*. at ¶ 12. Defendant timely removed the action to this Court and now moves to dismiss Plaintiffs' claims.

### IV. Legal Standard

A pleading that states a claim for relief must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). A party may ask that a complaint or portion of a complaint be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

In determining the sufficiency of the complaint, a district court must conduct a two-part analysis. First, the court should separate the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Threadbare recitals of the cause of action do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, the court must determine whether the factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint need not include "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id.* at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir.2002)). A complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678)).

In determining whether a plaintiff has shown a "plausible claim for relief" the Court must conduct a "context specific" inquiry that requires it to "draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document *integral to or explicitly relied* upon in the complaint." *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)).

If a complaint is vulnerable to dismissal under Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips,* 515 F.3d at 236; *see also Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000) ("[L]eave to amend generally must be granted unless the amendment would not cure the deficiency.").

## V. Discussion

### a. Plaintiffs' Claims

In Count I of their Complaint, Plaintiffs claim that Defendant is liable to them for breach of contract damages. Plaintiffs allege that the December 1, 2009 letter sent to Defendant constituted a valid offer, which Defendant accepted by cashing the enclosed check. ECF No. 2-2 at ¶¶ 9-10 ;15-18. They further allege that Defendant breached this contract when Defendant returned to Plaintiffs their 6th payment with a letter stating that Defendant would not accept this payment and demanded the sum of $13,651.36. *Id*. at ¶ 18. Plaintiffs claim that they suffered harm including foregoing other remedies they might have pursued to save their home, such as restructuring their debts under the bankruptcy code or pursuing other strategies to deal with their defaults, such as selling their home. *Id*. at ¶ 19. Plaintiffs also allege that they built up delinquency in an amount exceeding that which would otherwise have accrued. *Id*. Plaintiffs claim that Defendant imposed improper fees and costs on borrowers' accounts during and after their trial modification period. *Id*. at ¶ 20. Plaintiffs also claim to have suffered the additional harms of foreclosure and collection activity against their home and adverse credit reporting, which undermined their credit standing for lower cost refinancing and other necessary credit transactions. *Id*. at ¶¶ 21-22. Lastly, Plaintiffs allege that they have lived in a state of stressful anxiety as a result of the limbo in which Defendant placed them. *Id*. at 23.

Plaintiffs ask for judgment in the form of compensatory damages in excess of $50,000[1] in connection with Count I. *Id*.

In Count II of their Complaint, Plaintiffs claim that Defendant is liable to them for breaching the implied covenant of good faith and fair dealing. Plaintiffs allege that Defendant breached this duty in seven ways: by (i) failing to perform loan servicing function consistent with its responsibilities to Plaintiff; (ii) failing to supervise its agents and employees properly including, without limitation, its loss mitigation and collection personnel and its foreclosure attorneys; (iii) routinely demanding information it has already received; (iv) making inaccurate calculations and determinations of Plaintiffs' eligibility for HAMP; (v) failing to follow through on promises; (vi) failing to follow through on contractual obligations; and (vii) failing to give permanent HAMP modification and other foreclosure alternatives to Plaintiffs. *Id*. at ¶ 27. Plaintiffs allege further that Defendant benefitted financially from these breaches in various ways including imposing fees and charges on borrowers' accounts during the period of time during which Plaintiffs made modified payments. *Id*. at ¶ 29. Plaintiffs allege that the same harms stemmed from this breach as in Count I, namely, lost opportunity of pursuing other remedies to save their home and dealing with their defaults, adverse effects on permanent modification terms, adverse reporting against their credit profiles, being in further arrears than they otherwise would have been, and living in a state of

---

[1] Plaintiffs seek damages in excess of $50,000 for each of their four claims. The Complaint thus satisfies the amount in controversy requirement when the claims are taken in the aggregate. *See* ECF No. 2 at ¶¶ 25-26.

stressful anxiety. *Id*. at ¶ 30. Plaintiffs allege that this state of stressful anxiety has led to health consequences for Plaintiff Kenneth Geesey. *Id*. Plaintiffs request damages in excess of $50,000 in connection with this Count II.

In Count III of the Complaint, Plaintiffs claim, in the alternative to their breach of contract claim, that Defendants are liable to them under a theory of promissory estoppel. Plaintiffs allege that Defendant, by way of its agents, made representations to Plaintiffs that they qualified for HAMP mortgage modifications and that the agents made these representations for the purpose of inducing Plaintiffs' reliance. *Id*. at ¶¶ 32-33. Plaintiffs state that they did rely on Defendant's representations by foregoing making their regular monthly payments, that this reliance was reasonable, and that this reliance was to their detriment. *Id*. at ¶¶ 34-35. Plaintiffs allege that they have suffered detriment in the following ways: lost opportunity of pursuing other means of dealing with their defaults; Defendant's imposition of improper fees and costs on Plaintiffs; foreclosure and collection activity against their home; decrease in income to Plaintiff Kenneth Geesey who, as a financial professional, has a decreased ability to sell securities due to poor credit; damages in reliance on Defendant's failure to provide permanent HAMP modifications because they are now in further arrears than they otherwise would have been; and a state of stressful anxiety because of Defendant's conduct. *Id*. at ¶¶ 37-41.

In Count IV of Plaintiffs' Complaint, they claim that Defendant is liable to them for its violation of the Pennsylvania Consumer Protection Act and applicable regulations. Plaintiffs allege that Defendant violated this Act in five ways: (i) unlawful acts or

practices, in that its conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business; (ii) in that its conduct violated the requirement of good faith and fair dealing applicable to contracts under Pennsylvania law; (iii) in that its conduct violated existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare; (iv) in that it made deceptive representations and failed to disclose relevant information as to loan modifications offered to borrowers; and (v) in that it is a Mortgage Lender and made false or misleading representations to borrower. *Id*. at ¶ 43. Plaintiffs state that, by this conduct, they were injured in the following ways: wrongful foreclosure; otherwise avoidable losses of home to foreclosure; less favorable loan modifications; increased fees and other costs to avoid or attempt to avoid foreclosure; loss of savings in fruitless attempts to secure loan modifications; loss of opportunities to pursue other refinancing or loss mitigation strategies; and significant stress and emotional distress. *Id*. at ¶ 44. Plaintiffs allege that Defendant's conduct was willful or knowing within the meaning of the Act and demand judgment in excess of $50,000 and attorneys' fees in connection with Count IV of the Complaint. *Id*. at ¶ 45.

### b. Summary of Defendant's arguments

Defendant's Motion to Dismiss asserts that the Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. Defendant first argues that all of Plaintiffs' claims should be dismissed as they are improper attempts to fabricate claims under HAMP, which does not provide for a

private cause of action. *Id*. at 6-9. Next, Defendant argues that each claim fails independently as a matter of law. *Id*. at 9-20.

With regard to the breach of contract claim, Defendant argues that Plaintiffs cannot establish the existence of a contract because they have not alleged the critical elements of contract and even if they had, they did not allege the requisite offer and acceptance of the agreement. *Id*. at 9-12. Defendant also argues that the breach of contract claim must fail because the purported agreement is not supported by consideration. *Id*. Lastly, Defendant argues that even if Plaintiffs could establish the existence and terms of a contract, the claim is barred by the Statute of Frauds. *Id*. at 13.

As to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, Defendant argues that this claim too must fail because Plaintiffs have not alleged the existence of an enforceable contract. *Id*. at 14. Thus, Defendant argues, there is no contract onto which the implied covenant of good faith and fair dealing can attach. *Id*. Defendant also argues that the Complaint fails to allege that Plaintiffs are entitled to a loan modification under any existing contract, such as their Note or Mortgage, so the implied covenant cannot attach to these undisputed agreements. *Id*. Lastly, Defendant argues that this claim must fail because the law is clear that Plaintiffs were not entitled to a loan modification. *Id*. at 15.

Defendant argues that Plaintiffs' promissory estoppel claim fails as a matter of law. Defendant argues that Plaintiff does not and cannot allege that Defendant made a promise to Plaintiffs that it would permanently modify their loan. *Id*. at 15-16. Defendant

also argues that there could not have been reasonable reliance in this case as is required to state a cause of action for promissory estoppel under Pennsylvania law. *Id*. at 16. Defendant notes that Plaintiffs admit that Defendant specifically declined to extend them a loan modification. *Id*.

Lastly, Defendant argues that Plaintiffs' claim under the UTPCPL must fail for three reasons: (1) Plaintiffs lack standing to sue under this statute; (2) even if Plaintiffs had standing to sue under the UTPCPL, their claims are barred by the gist of the action doctrine and the economic loss rule; and (3) Plaintiffs fail to allege all elements of common law fraud, as they must to state a claim under the "catchall" provision of the UTPCPL.

The Court will address each of Defendant's arguments in turn in the analysis section that follows.

### c. Analysis

#### 1. HAMP does not bar Plaintiffs' claims

The Defendant argues that the Plaintiffs' claims are barred because they are all predicated on the Defendant's failure to offer a loan modification under the Home Affordable Modification Program (**HAMP**), which does not provide a private right of action. ECF No. 8 at 6-8; ECF No. 26-2 at 2-3. In their opposition, Plaintiffs argue that the viability of their claims does not depend on the existence of a private right of action under HAMP and that HAMP therefore does not bar their claims. ECF No. 13 at 5-6. The Court agrees with Plaintiffs and holds that Plaintiffs' claims are viable notwithstanding that they arise in the context of HAMP discussions between Plaintiffs and Defendant.

HAMP is a federally-regulated foreclosure mitigation program. The Secretary of the Treasury and the Director of the Federal Housing Finance Agency announced the Making Home Affordable (**MHA**) program in February 2009 pursuant to authority to "mitigate the financial impact of the foreclosure crisis and preserve homeownership" under the Troubled Asset Relief Program. Part of the MHA, HAMP gives borrowers who are struggling to pay their mortgages an opportunity to apply to their loan servicer for a permanently-reduced monthly payment. HAMP requires borrowers to submit financial information and to participate in a three-month trial period. The terms of the trial period are governed by a Trial Period Plan, commonly known as the "TPP." The TPP provides that if at the end of the trial period certain conditions are met, the loan servicer will provide the borrower with a permanent loan modification. One condition to permanent modification is the lender's determination that the borrower qualifies for permanently lowered payments. *See Cave v. Saxon Mortgage Services, Inc.*, 2012 WL 1957588, at *1 (May 30, 2012); *Healey v. Fargo, N.A.*, 2012 WL 994564, at *6 (Pa.Com.Pl. March 20, 2012) (quoting 12 U.S.C. §§ 5201, 5211-5241) (internal citations and quotations omitted). Borrower failures to receive permanent loan modifications have produced a substantial amount of HAMP-related litigation under various theories.

In some cases, borrowers assert claims directly under HAMP. Courts uniformly reject such challenges; the law is clear that HAMP does not create a private right of action. *See Sinclair v. Citi Mortg., Inc.*, 519 Fed. Appx. 737, 739 (3d Cir. 2013) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012)); *Hoover v. Wells Fargo Bank*, 2014 WL

820197, at *2 (W.D. Pa. Mar. 3, 2014) (citing cases) (rejecting the plaintiff's argument for federal question subject matter jurisdiction under HAMP and stating that "the federal courts have uniformly held that HAMP and its attendant regulatory edicts do not create a private right of action").

Other homeowners pursue breach of contract claims instead alleging that they are third-party beneficiaries of servicers' SPAs (Servicer Participation Agreements) with Fannie Mae. Courts generally reject such challenges as well, holding that homeowners are merely incidental—rather than intended—beneficiaries of the SPAs. *See, e.g., Moore v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 253834, at *15 (D.N.H. Jan. 27, 2012) ("The Moores do not point to any other provision of the SPAs, or allege any other facts, plausibly suggesting that they are among the intended third-party beneficiaries of those agreements."); *Escobedo v. Countrywide Home Loans, Inc.*, 2009 WL 4981618, at *3 (S.D.Cal. Dec. 15, 2009) ("Qualified borrowers are incidental beneficiaries of the [Servicer Participation] Agreement and do not have enforceable rights under the contract.").

Here, however, the Plaintiffs do not assert claims directly under HAMP. Nor do they claim to be third-party beneficiaries of the SPA. Rather, the Plaintiffs base their claims in state contract and statutory principles. Courts have addressed similar claims involving HAMP-related breach of contract cases, many of which were brought under state law theories and alleged that the lender breached the TPP and is thus liable to the borrower for damages. The courts have reached conflicting decisions regarding the viability of such claims.

Some courts hold that borrowers' claims based on the TPP are not viable because, even though they are not brought directly under HAMP, they are not wholly independent of HAMP. For example, in *Bourdelais v. J.P. Morgan Chase*, the Plaintiff entered a TPP with the Defendant and completed the three-month trial period, after which she was denied a permanent loan modification. 2011 WL 1306311, at *2 (E.D.Va. Apr. 1, 2011). The Plaintiff filed an Amended Class Complaint alleging breach of contract as well as two statutory claims. *Id*. The Plaintiff recognized that HAMP does not create a private right of action and that borrowers are not third-party beneficiaries of SPAs, but argued that these facts were irrelevant because her complaint alleged breach of contract under state law principles. *Id*. at *4. The court dismissed the plaintiff's breach of contract claim because it was not "wholly independent of HAMP." *Id*. In reaching this conclusion, the court noted that the plaintiff's own complaint characterized HAMP as "the program that [was] at issue in [the] case" and attached HAMP program documentation. *Id*. These facts, the court held, indicated that HAMP and its guidelines were "indispensable" to the plaintiff's breach of contract claim. *Id*. Furthermore, the court held, even if the plaintiff's claim had been wholly independent of HAMP, she still had not stated a plausible claim for breach of contract because the plain language of the TPP "belie[d] her claim." *Id*. *See also Senter v. JPMorgan Chase Bank, N.A.*, 810 F.Supp.2d 1339, 1350-51 (S.D.Fla. 2011) (holding that the TPP could not provide the basis for the Plaintiffs' breach of contract claims and noting that Plaintiffs' reliance on HAMP guidelines was an "improper attempt to assert a private right of action under the HAMP."); *Stolba v. Wells Fargo & Co.*, 2011 WL 3444078, at *3

(D.N.J. Aug. 8, 2011) (dismissing for failure to state a claim Plaintiffs' state law claim for breach of contract and breach of the implied covenant of good faith and fair dealing and concluding that the plain language of the TPP makes it clear that satisfying the TPP conditions does not guarantee an offer of permanent loan modification); *Vida v. OneWest Bank, F.S.B.*, 2010 WL 5148473, at *5 (Dec. 13, 2010) ("The flaw in Vida's logic is that the alleged offer to modify came about and was made wholly under the rubric of HAMP … Vida fails to state a cause of action independent of HAMP, for which there is no private right of action."). In its motion to dismiss, Defendant points to cases like these and argues that they support dismissal of Plaintiffs' claims. The Court disagrees for two main reasons.

First, the Court holds that a second line of cases, which indicates that state law claims are viable even if they arise in the context of a HAMP-related fact pattern, has the better rationale. Indeed, the only state or federal Pennsylvania court to address this question held that state law contract actions are not preempted by HAMP simply because the contract at issue involves HAMP. *Healey v. Wells Fargo, N.A.*, 2012 WL 994564, at 7 (Pa.Com.Pl. Mar. 20, 2012). The Court also notes that *Vida v. OneWest Bank, F.S.B.*, which the Defendant cites for support of its motion, dismissed the plaintiff's claims as insufficiently independent of HAMP, but only with the caveat that it disagreed with "Defendants' premise that [lenders] are wholly immunized for their conduct so long as the transaction is associated with HAMP." 2010 WL 5148473, at *5 (D.Or. Dec. 13, 2010). This statement signifies that even though on the facts of that case the court held that the

allegations were too closely tied to HAMP to state an independent cause of action, there could be cases in which the claim is sufficiently distinct from HAMP such that HAMP does not bar the claim. *See also Fletcher v. OneWest Bank, FSB*, 798 F.Supp.2d 925, 930-31 (N.D.Ill. 2011) ("[W]ithout some explicit direction from Congress that it intended … HAMP to have…preemptive force, the Court will not preclude Fletcher from pursuing her basic state common law remedies …[I]t seems logical that a TPP, if it appears to fit the legal definition of a contract, can also provide the basis for a suit under state law even if its terms are prescribed by the federal government. Why should the fact that OneWest contracted to follow federal law prohibit Fletcher from holding it to that contract?").

Second, even if the Court accepted the reasoning in *Bourdelais* and *Senter*, the Court is not persuaded that the reasoning of these cases supports dismissal of the claims in the instant dispute; the Plaintiffs' claims here are factually dissimilar from cases in which claimants have sued based on a an alleged breach of the TPP. The case at hand is similar to these cases in that it involves state law claims arising out of HAMP-related circumstances. In *Bourdelais* and *Senter*, however, the plaintiffs had entered TPP agreements and sued defendants based on the TPP itself.

Plaintiffs' claims are distinguishable. The Plaintiffs here do not allege that they entered a TPP. Nor do they assert claims based on a breach of the TPP. They also do not base their claims on their allegations of oral representations of HAMP-related interest rates. Instead, the Plaintiffs allege that they made an offer when they, through counsel, sent a letter to Defendant and that Defendant accepted this offer by depositing the

16

enclosed check. Unlike the cases above, therefore, Plaintiffs' claims are not made "wholly under the rubric of HAMP," and are instead rooted firmly in state contract law principles of offer and acceptance. Thus, even assuming the reasoning of the above cases is sound, Plaintiffs' claims are viable. These cases require only that a plaintiff allege state law claims that are sufficiently independent of HAMP such that they are not improper attempts to create a private right of action where one does not exist. The Court does not read these cases as requiring an automatic dismissal wherever a HAMP-related fact pattern arises. The Court thus holds that Plaintiffs' allegations are sufficiently independent of HAMP such that HAMP does bar their viability. The Court holds that HAMP does not require dismissal of Plaintiffs' claims.

Having determined that HAMP does not bar the Plaintiffs' claims, the Court now turns to whether Plaintiffs have stated a cause of action for each of their four individual claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; and (4) violation of the UTPCPL catchall provision. For the reasons discussed below, the Court concludes that Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel fail as a matter of law and therefore grants Defendant's motion as to these counts. The Court concludes that Plaintiffs have stated a claim for violation of the UTPCPL catchall provision and thus denies Defendant's motion as to that count.

## 2. Plaintiffs' claim for breach of contract fails as a matter of law

Defendant seeks dismissal of Plaintiffs' claim for breach of contract based on two asserted defects. First, Defendant argues that Plaintiffs have not alleged the existence of a contract. Second, Defendant argues that even if Plaintiffs have alleged the existence of a contract, their claim for breach of contract is barred by the Statute of Frauds. Because the Court concludes that Plaintiffs failed to allege the existence of a contract, the Court dismisses Plaintiffs' claim for breach of contract and does not reach the issue of whether such purported contract is barred by the Statute of Frauds.

To maintain a cause of action for breach of contract under Pennsylvania law, Plaintiffs must allege: " '(i) the existence of an agreement, including its essential terms; (ii) a breach of a duty imposed by that agreement; and (iii) damages resulting from the breach.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "While not every term of a contract must be stated in complete detail, every element must be specifically pleaded." *CoreStates Bank*, 723 A.2d at 1058. An enforceable agreement exists only if there is an offer, acceptance, and exchange of consideration. *Pennsylvania Workers' Compensation Judges Professional Ass'n v. Executive Bd. of Com.*, 39 A.3d486, 493 (Pa. Cmwlth. 2012). A contract under Pennsylvania law requires that the parties agree on the "material and necessary details of the bargain." *Peck v. Delaware County Bd. Of Prison Inspectors*, 572 Pa. 249, 260 (2002) (internal quotations and citation omitted).

Here, the Plaintiffs allege in Count I of their Complaint that the December 2009 Letter constituted a valid offer, which the Defendant accepted by cashing the attached check and by continuing to cash checks sent to them by Plaintiffs for a period of five months. ECF No.2-2 at ¶¶ 15-17. They allege that the letter contained language explaining that Defendant's "cashing of [the] check will represent Citi's acceptance of the modification of the Geesey's mortgage." *Id*. at ¶ 9. The letter, attached to the Complaint as Exhibit "A," stated, in relevant part, "Enclosed please find my clients' check in the amount of $1,591.40. This represents the amount of the original modification agreement." *Id*. at Ex. A. Plaintiffs allege that Defendant breached this contract by refusing to accept Plaintiffs' sixth payment and by demanding the sum of $13,651.35. *Id*. at ¶ 18. Plaintiffs lastly allege that they suffered damages as a result of this breach in various ways including lost opportunity costs, improper fees and costs, adverse effects on their credit, and having to live in a state of stressful anxiety. *Id*. at ¶¶ 19-23.

Reading the facts in the Complaint and related documents in the light most favorable to Plaintiffs—i.e. taking all facts Plaintiffs allege as true and drawing all reasonable inferences in their favor—the Court does not find that Plaintiffs have stated a plausible claim for relief for breach of contract. Rather, the Court concludes that Plaintiffs fail as a matter of law to state a claim for breach of contract because they fail to allege the essential terms of the purported contract. To establish an enforceable loan modification, the Plaintiffs must allege certain terms essential to such a bargain, such as the term of the loan, the new amount of monthly payments, and the new interest rate. The Complaint

includes none of these terms. It alleges only that representatives of the Defendant spoke to the Plaintiffs on various occasions and offered varying interest rates of 4.00% and 5.20%. ECF No. 2-2 at ¶¶ 5-7. At no point do Plaintiffs allege that they accepted these interest rates. Nor do they allege that any other essential terms of loan modification were discussed. Instead, the Plaintiffs assert that the December 2009 letter constituted the requisite offer. This letter, however, stated only that the enclosed check "represent[ed] the amount of the original modification agreement." ECF No. 2-2 at Ex. A. The Complaint itself states only that the letter's terms were "consistent with the original terms of the offer made by Defendant to Plaintiffs." Id. at ¶ 9. This language is vague and does not provide the requisite essential terms for a contract to form. Plaintiffs also allege that they made monthly payments for five months in a reduced amount, but do not specify the date on which these payments were made or the amount of the payments. Taking the facts alleged as true, it remains unclear to what "modification agreement" the letter refers, as the Complaint makes no allegation of such an agreement arising at any time prior to the letter itself. It is possible that this language was designed to refer to the various interest rates that representatives of the Defendant offered to the Plaintiffs as alleged in the Complaint. These rates, however, do not help Plaintiff's claim because they are conflicting and uncertain. The letter and its reference to the "original terms" are thus ambiguous and do not provide the essential contract terms that are needed for a contract to exist under Pennsylvania law.

The Plaintiffs argue in their Opposition that the December 2009 Letter and the Defendant's subsequent cashing of the attached check constituted a valid accord and satisfaction. ECF No. 13 at 8-9. Leaving aside the issue of whether the defense of accord and satisfaction applies to the facts at hand, this purported accord and satisfaction suffers from the same flaw as the purported modification agreement discussed above. Namely, it fails to include the essential terms of the agreement. Because an accord and satisfaction is a form of contract, its enforceability is governed by the rules applicable to contracts in general. *See Occidental Chemical Corp. v. Environmental Liners, Inc.*, 859 F.Supp. 791, 793 (E.D. Pa. 1994) (citing *Brunswick Corp v. Levin*, 442 P.a. 488 (1971); *Nowicki Const. Co. v. Panar Corp., N.V.*, 342 Pa. Super. 8 (1985)). For the same reasons discussed above, therefore, the Court concludes that the Complaint fails to allege the existence of an accord and satisfaction.

Moreover, even if the Plaintiffs could establish that the December 2009 Letter and the Defendant's subsequent cashing of the attached check represented the essential terms required for a contract to exist, the Complaint contains no allegations that this accord and satisfaction is supported by valid consideration. Pennsylvania courts recognize that resolution of a disputed claim can constitute the requisite consideration where there is disagreement between the debtor and creditor as to their respective rights under a contract. *See Hayden v. Coddington*, 82 A.2d 285, 287 (Pa. Super. Ct. 1951). Here, however, as Defendant points out in its Reply, the Plaintiffs make no allegation of a dispute as to the rights or obligations under the Mortgage or Note. *See* ECF No. 26-2 at 3-4.

Instead, in their Opposition to the instant Motion, Plaintiffs assert that the varying assertions made to them by Defendant's agents as to interest rates and the "31%-of-income provision under HAMP" provide the requisite "disputed claim" for purposes of an accord and satisfaction. ECF No. 13 at 8. These varying representations from Defendant's agents, however, can not constitute a bona fide dispute, because these interest rates as alleged represent offers for modification. The Complaint makes no allegation that these interest rates ever became part of any agreement or binding on the parties prior to the December 1, 2009 letter and Defendant's subsequent cashing of the check. There is thus no bona fide dispute as to the amounts owed under the Mortgage and Note, which constituted the only contract between the parties at the time the December 1, 2009 letter was sent. Thus, even if the Court did recognize an accord and satisfaction in this case, the claim would fail because the allegations in the Complaint do not establish that such accord and satisfaction was supported by consideration.

Having determined that Plaintiffs' claim for breach of contract fails as a matter of law for failure to plead the essential terms of the agreement, the Court does not address the parties' remaining arguments on this Count One of the Complaint.

### 3. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law

Defendant argues that Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing to the extent it is asserted as an independent claim in the Complaint. Defendant argues that because Plaintiffs do not allege the existence of an enforceable contract, there can be no duty of good faith and fair dealing implied

therein to be breached. Defendant also argues that the Complaint lacks any averment that Plaintiffs are entitled to a loan modification under any other existing agreement. Finally, Defendant argues that the law is clear that Plaintiffs were not entitled to a loan modification. ECF No. 8 at 14-15.

In Opposition, Plaintiffs argue that Defendant breached the implied covenant of cood faith and fair dealing appurtenant to the undisputed mortgage contract between Plaintiffs and Defendant. Plaintiffs also argue that the Defendant breached the implied covenant of good faith and fair dealing appurtenant to the alleged agreement that arose when their counsel sent Defendant the check and letter on December 1, 2009. ECF No. 13 at 7-9.

In Reply, Defendants argue that Defendant had no obligation to enter a loan modification with Plaintiffs and that Plaintiffs failed to point to a provision in the Note or Mortgage requiring CitiMortgage to modify or consider modifying the terms of the Loan. Lastly, Defendant argues that it did not violate a separate duty of good faith by enforcing its contractual rights as a creditor. ECF No. 26-2 at 6-7.

The implied duty of good faith requires that a party to a contract refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract. *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 434, n. 11 (Pa. 2001). The obligation of good faith is tied to the duties a contract imposes on the parties; it is akin to the doctrine of necessary implication. *Id*.

The implied duty of good faith and fair dealing is recognized in Pennsylvania in limited situations. A lending institution does not violate a separate duty of good faith by adhering to its agreements with a borrower or by enforcing its contractual rights as a creditor. *See Heritage Surveyors & Engineers, Inc. v. National Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. Ct. 2002), *Creeger Brick and Bldg. Supply Inc. v. Mid-State Bank and Trust Co.*, 560 A.2d 151, 154-55 (Pa. Super. Ct. 1989). "A lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons." *Cable & Associates Ins. Agency, Inc. v. Commercial Nat. Bank of Pennsylvania*, 875 A.2d 361, 364 (Pa. Super. Ct. 2005). Moreover, Pennsylvania courts have consistently stated that no claim for breach of the implied covenant of good faith and fair dealing lies where an adequate remedy exists under another cause of action, such as a statutory violation or claim for breach of contract. *See Creeger*, 560 A.2d at 154-55 ("[A]ppellants may have causes of action in tort for slander, misrepresentation, or interference with existing or prospective contractual relations. There is no need in such cases to create a separate tort for breach of a duty of good faith."). *See also Mutual Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981) (refusing to recognize separate cause of action for breach of good faith where adequate remedy was provided under Unfair Insurance Practices Act).

Plaintiffs allege in Count II of their Complaint that Defendant breached the duty of good faith and fair dealing by: (i) failing to perform loan servicing function consistent with its responsibilities to Plaintiff; (ii) failing to supervise its agents and employees

properly including, without limitation, its loss mitigation and collection personnel and its foreclosure attorneys; (iii) routinely demanding information it has already received; (iv) making inaccurate calculations and determinations of Plaintiffs' eligibility for HAMP; (v) failing to follow through on promises; (vi) failing to follow through on contractual obligations; and (vii) failing to give permanent HAMP modification and other foreclosure alternatives to Plaintiffs. Plaintiffs allege that these acts and failures to act constitute bad faith by the Defendant, that Defendant financially benefitted from these breaches of the implied covenant, and that Plaintiffs suffered harm as a result. ECF No. 2-2 at ¶¶ 24-30. The Court finds that the Plaintiffs' allegations as to this Count III of their complaint fall into three categories: (i) allegations that Defendant breached the implied covenant of good faith and fair dealing as implied in the contract that allegedly formed as a result of the December 1, 2009 letter and check; (ii) allegations that Defendant breached the implied covenant of good faith and fair dealing by failing to give a loan modification under HAMP; and (iii) allegations that Defendant breached the implied covenant of good faith and fair dealing as implied in the undisputed mortgage contract and note between the parties. The Court assesses each of these categories in turn.

With regard to the first category of allegations in Count III, the Court concludes that Defendants did not breach a duty of good faith as it relates to the alleged contract arising out of the December 1, 2009 letter and check. The law in Pennsylvania is clear that there can be no claim for breach of good faith and fair dealing when there is no contract to which such obligation attaches. *See Nowicki v. First Union Nat'l Bank*, No. 0763, 2004 Phila.

Ct. Com. Pl. LEXIS 110, at *11 (Phila. Com. Pl. Ct. Apr. 15, 2004). Therefore, having already decided that Plaintiffs failed as a matter of law to plead the existence of a contract arising out of their December 1, 2009 letter to Defendant, the Court concludes that Plaintiffs' claim for breach of the implied duty of good faith and fair dealing fails as a matter of law to the extent it relates to this alleged contract.

The Court concludes that the second category of allegations, which claim that Defendant breached the implied covenant of good faith and fair dealing by failing to modify their loan under HAMP, also fails to state a claim. Plaintiffs allege that CitiMortgage breached the implied duty of good faith and fair dealing by "making inaccurate calculations and determinations of Plaintiffs' eligibility for HAMP," and by "failing to give permanent HAMP modification and other foreclosure alternatives to Plaintiffs." ECF No. 2-2 at ¶ 27. As discussed above at length, the law is clear that HAMP does not entitle a borrower to a loan modification and does not provide for a private right of action. *See, e.g., Williams v. Timothy F. Geithner*, 2009 WL 3757380, at *6-7 (D.Minn. Nov. 9, 2009) (Noting that while HAMP is a plan to assist distressed homeowners, "that plan not only made servicer participation voluntary, but also afforded program participants discretion on several variables" and thus concluding that Plaintiffs did not have a legitimate claim of entitlement to a loan modification), *HSBC Bank, NA v. Donaghy*, 101 A.3d 129 ,136 (Pa. Super. 2014) (dismissing Plaintiff's claim under HAMP and noting that regardless of whether Defendant complied with HAMP requirements, Plaintiff did not have a right of action to sue, primarily because she was not an intended third party

beneficiary of the HAMP contract between the federal government and her lender). Thus, to the extent Plaintiffs base their breach of the implied duty of good faith and fair dealing claim on these alleged misrepresentations and failed modifications under HAMP, the claim must fail.

Finally, the third category of allegations, which claim that Defendant breached the covenant of good faith and fair dealing as implied in the undisputed mortgage contract and note between the parties also fails to state a claim. Plaintiffs allege that Defendant breached the implied duty of good faith and fair dealing by failing to perform loan servicing function consistent with its responsibilities to Plaintiff, failing to supervise its agents and employees properly, including, without limitation, its loss mitigation and collection personnel and its foreclosure attorneys, routinely demanding information it has already received, failing to follow through on promises, and failing to follow through on contractual obligations. ECF No. 2-2 at ¶ 27. These allegations fail to support a claim for breach of the implied covenant of good faith and fair dealing for two separate reasons. First, to the extent these allegations assert that the Defendant breached contractual duties, Pennsylvania law is clear that such claims are better asserted as breach of contract claims and that they do not state a claim for breach of the covenant of good faith. Thus, if Plaintiffs believe that Defendant breached a duty to them arising under the Mortgage agreement, they should assert a claim for breach of that Agreement, rather than formulating these allegations as breaches of the covenant of good faith. *See Creeger*, 560 A.2d at 154-55.

Moreover, even if these allegations were not duplicative of breach of contract claims, the Court concludes that Plaintiffs' Complaint lacks a sufficient basis upon which Plaintiffs' bad faith claim could be founded. Plaintiffs do not allege that Defendant misrepresented the loan modification interest rates. Nor do they allege that Defendant acted in any way contrary to its obligations under the Mortgage agreement. The Complaint contains no factual allegations from which the Court can reasonably infer that Defendant acted in any way to destroy or injure Plaintiffs' ability to receive the fruits of the mortgage agreement between the parties. Rather, Plaintiffs allege only that they were told they had to be in default on their loan payments before they would be considered for a loan modification, that they received varying interest rate quotes from Defendant's agents, and that ultimately, the Defendant denied them a modification. ECF No. 2-2 at ¶¶ 4-8. Plaintiffs' allegations demonstrate that Defendant acted in accordance with the Mortgage agreement and sought to enforce its terms. Defendant cannot be held liable for its failure to secure a binding loan modification with Plaintiffs or for exercising its contractual right under the Mortgage to demand payments due under that contract, particularly when the Complaint makes no mention that the parties had entered a valid modification agreement prior to Defendant's demand for that money on May 16, 2010. ECF No. 2-2 Ex. B.

Having examined all allegations Plaintiffs offer in support of Count II of the Complaint, the Court concludes that there is no allegation from which the Court can derive a reasonable inference that Defendant acted in bad faith. The Court thus holds that

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law.

## 4. Plaintiffs' claim for promissory estoppel fails as a matter of law

Defendant argues that Plaintiffs' promissory estoppel claim fails as a matter of law for the following reasons. First, Defendant argues that Plaintiffs cannot fabricate a HAMP cause of action by couching it as a promissory estoppel claim. Moreover, Defendant argues, Plaintiffs allegations do not state a cause of action for promissory estoppel because they failed to allege a promise or reasonable reliance on any statement made by Defendant.

In response, Plaintiffs argue, in the alternative to their breach of contract claim, that they adequately alleged the elements of promissory estoppel as required under Pennsylvania law. Specifically, Plaintiffs allege that agents of Defendant represented to Plaintiffs that they would be entitled to a modification of their loan if they were in default and represented such modification at various interest rates, that the Plaintiffs relied on these representations by refraining from making payments on their mortgage, and lastly that injustice can be avoided only by enforcing the alleged promises.

The doctrine of promissory estoppel allows a party, under certain circumstances, to enforce a promise even though the promise is not supported by consideration. *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1007 (Pa.Super. 1997). To maintain an action for promissory estoppel, the Plaintiffs must show that: (i) the promisor made a promise that he or she could have reasonably expected to induce action or forbearance on

the part of the promisee; (ii) the promisee actually took action or refrained from taking action in reliance on the promise; (iii) injustice can be avoided only by enforcing the promise. *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003) (citing *Crouse v. Cyclops Industries*, 560 Pa. 394 (2000)). Pennsylvania law requires a claim for promissory estoppel to be based upon an express promise. *C&K Petroleum Products, Inc. v. Equibank*, 839 F.2d 188, 191 (3d Cir. 1988) ("promissory estoppel would be rendered meaningless if this Court were to allow [plaintiff] to maintain an action for detrimental reliance based on the alleged existence of … a broad and vague implied promise." *See also Nabisco, Inc. v. Ellison*, 1994 WL 622136, at *7 (E.D.Pa. Nov. 8, 1994) ("Allowing a claim for promissory estoppel to be based on an implied promise would in effect allow a claim to be based upon the plaintiff's subjective expectations.").

The Court concludes that Plaintiffs failed to allege that Defendant or any agent of Defendant made a promise to Plaintiff on which Plaintiff justifiably relied. Plaintiffs allege that: (1) when they called Defendant in 2007, they were told "that they had to wait a year before a loan modification would be considered"; (2) when they called in late Summer of 2009, they were told that "nothing could be done [regarding a loan modification] unless they were three months behind on their payments" and that, relying on this representation, "Plaintiffs did not make payments for three months"; (3) when Plaintiff Kenneth Geesey spoke to an agent of Defendant in October 2009, he was told that "he was being placed into the 'HAMP' Program, which would lower his interest rate to 4.00% and would begin on 11/01/09"; (4) when Plaintiff Kenneth Geesey spoke to another agent of

Defendant on October 16, 2009, the agent "reaffirmed his placement into the HAMP program"; (5) when Plaintiff spoke to another agent on October 28, 2009, the agent "expressed a new modification offer with an interest rate of 5.20% and beginning 12/1/2009"; and finally (6) when Plaintiff spoke to a final agent on October 30, 2009, this agent first "confirmed the modification" offered on October 28, 2009, but then "rejected [the] offer she made because there was a problem with Plaintiff's '2nd mortgage'". ECF No. 2-2 at ¶¶ 3-8.

As discussed above, the Court concluded that HAMP does not bar Plaintiffs' individual claims, including their claim for promissory estoppel. The Court nonetheless concludes that Plaintiffs failed to allege that Defendant or its agents made a promise that it should have reasonably have expected to induce action or forebearance on the part of Plaintiff. The allegations outlined above do not indicate that Defendant or any of its agents made an express promise to Plaintiffs as is required under Pennsylvania law. Rather, the facts above show a series of offers of varying interest rates and potential placement into the HAMP program. Plaintiffs do not allege that Defendant promised to extend a loan modification at any time. The allegations outlined above indicate that a representative of Defendant merely told them that they would be eligible to apply for a loan modification if they were in default for three months. Plaintiffs do not allege that Defendant ever promised to modify their loan as a result of this default. Although Count III of the Complaint contains allegations that Defendant "made representations … that Plaintiffs qualified for HAMP" and that such representations were made "for the purpose

31

of inducing Plaintiffs to rely on the representations," such threadbare recitals of the cause of action do not suffice under the standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court thus concludes that Plaintiffs' claim for promissory estoppel fails as a matter of law.

### 5. Plaintiffs state a claim under the UTPCPL

Defendant argues that Plaintiffs' claim under the UTPCPL catchall provision should be dismissed for the following reasons. First, Defendant argues that Plaintiffs do not have standing to assert a cause of action under the UTPCPL. Second, Defendant argues that even if Plaintiffs had standing to pursue their UTPCPL claim, the claim is barred by the gist of the action doctrine and by the economic loss doctrine. Finally, Defendant argues that even if these doctrines do not bar the claim, Plaintiffs have failed to allege the required elements of a cause of action under the UTPCPL catchall provision. ECF No. 8 at 16-18.

The Unfair Trade Practices and Consumer Protection Law (UTPCPL) is Pennsylvania's consumer protection law. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa.Super.Ct. 2012). Its purpose is to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," as defined by the act. *Id.*; 73 Pa. Stat. Ann. § 201-3 (West 2008). The Pennsylvania Supreme Court has stated that the UTPCPL should be liberally construed to give effect to its legislative goal of consumer protection. *Bennett v. A.T. Masterpiece Homes*

*at Broadstprings, LLC*, 40 A.3d 145, 151 (citing *Pennsylvania ex rel. Creamer v. Monumental Properties, Inc.*, 459 Pa. 450 (1974)).

The Plaintiffs in this case base their UTPCPL claim on the "catchall provision" of section 201-2(4)(xxi). Until 1996, the catchall provision prohibited "'fraudulent conduct' that created a likelihood of confusion or misunderstanding." *Bennett v. A.T. Masterpiece Homes at Broadstprings, LLC*, 40 A.3d 145, 151 (Pa. Super. Ct. 2012) (citing prior version of the UTPCPL). The Pennsylvania Assembly has since amended the provision to prohibit "deceptive conduct" as well. *Id*. Thus, as it currently reads, the section prohibits a defendant from engaging in "any … fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." *Id*. 73 P.S. § 201-2(4)(xxi).

### A. Plaintiffs have standing to sue under the UTPCPL

Defendant argues that because the events upon which Plaintiffs base their claims do not involve a purchase or lease of goods, Plaintiffs lack standing under the UTPCPL. The Court concludes that this argument is without merit.

The UTPCPL provides a private right of action as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared by section 3 of this act, may bring a private right of action to recover actual damages or one hundred dollars ($100), whichever is greater.

*Balderston v. Medtronic Sofamore Danek, Inc*, 152 F.Supp.2d 772, 776 (E.D.Pa. 2001) *citing* 73 P.S. § 201-9.2(a). This language clearly establishes that the private right of action under the

UTPCPL is limited to anyone who purchases or leases goods or services for primarily personal, family or household purposes. The question here is whether Plaintiffs "purchased … goods or services" within the meaning of the statute. Based on relevant case law interpreting this statute, the Court concludes that they did.

The UTPCPL's "reach is expansive." *Trunzo v. Citi Mortg.*, 876 F.Supp.2d 521, 543 (W.D.Pa. 2012). Its private right of action has been construed to apply not only to those circumstances where the unfair or deceptive conduct induced the consumer to make the initial purpose, but also to unfair or deceptive practices which occur after entering an agreement and which were not a basis for the original agreement. *Id.* (holding that liability can be imposed upon a mortgage assignee under the UTPCPL provided that the plaintiff advances specific allegations of wrongdoing against the assignee, not simply against the original lender) (citing *In re Smith*, 866 F.2d 576 (3d Cir. 1989) (noting that a more limited reading would insulate all kinds of practices from the UTPCPL)). *See also Behr v. Federal Home Loan Mortg. Corp.*, 2015 WL 5123656, at *6 (W.D.Pa. July 29, 2015) (holding that liability could be imposed against a lender based on an underlying mortgage and related mortgage financing servces).

Defendant cites *Taylor v. Nelson*, No. 02-6558, 2006 WL 266052, at *9 (E.D.Pa. Jan. 31, 2006) in support of its argument that Plaintiffs lack standing under the UTPCPL. This case is inapposite. *Taylor* involved allegations that defendant Vintage Mortgage Corporation violated the UTPCPL by securing a fraudulent appraisal from another party in connection with the plaintiff's efforts to secure financing for the purchase of a home

that was later found to be uninhabitable. The court ruled that the plaintiff lacked standing to assert a UTPCPL violation because she had "neither alleged nor proffered evidence that she purchased or leased the allegedly fraudulent … appraisal from Vintage." *Id*. In this case, by contrast, the fraudulent behavior Plaintiffs allege, *inter alia*, that Defendant "is a Mortgage Lender and made false or misleading representations to borrower." ECF No. 2-2 at ¶ 43(e). This conduct alleged thus supports Plaintiffs' standing under the UTPCPL because the Plaintiffs gave value in exchange for the underlying mortgage and related services that Defendant is now alleged to have rendered in a fraudulent or deceptive manner. *See Behr*, 2015 WL 5123656, at *5.

Given the UTPCPL's purpose of protecting the public from unfair or deceptive business practices and Pennsylvania case law that takes a liberal view of the statute, the Court concludes that Plaintiffs have standing to bring their claim under the UTPCPL's catchall provision.

### B. The economic loss doctrine and gist of the action doctrine do not bar Plaintiffs' claims under the UTPCPL

Defendant next argues that Plaintiffs claim under the UTPCPL must fail because it is barred by the "gist of the action" doctrine, or alternatively, because it is barred by Pennsylvania's "economic loss rule."

Under Pennsylvania law, the gist of the action doctrine maintains the conceptual distinction between contract law and tort law. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). The reasoning for this distinction is that

tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus … To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

*Id.* (quotation omitted). "As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." *Id.* The mere existence of a contract does not preclude a party from bringing a tort claim, but "the [tortious acts] ascribed to the defendant must be the gist of the action, the contract being collateral." *Id.* (quotation omitted).

In applying the gist of the action doctrine, courts consider the claim as a whole in determining whether the "essential ground" of the action sounds in contract or tort. *Am. Guarantee & Liab. Ins. Co. v. Fojanini*, 90 F.Supp.2d 615, 622 & n.12 (E.D.Pa. 2000). Courts have consistently applied the doctrine to bar tort claims

(1) arising solely from a contract between the parties;

(2) where the duties allegedly breached were created and grounded in the contract itself;

(3) where the liability stems from a contract; or

(4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) (citation omitted).

The economic loss doctrine is closely related to the gist of the action doctrine. Both doctrines share the common purpose of "maintaining the separate spheres of the law of

contract and tort." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925 (Pa. Super. Ct. 1989). As a general rule, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002). Thus, "claims for only economic losses are appropriately brought as breach of contract or warranty claims rather than as tort claims." *Fid. & Deposit Co. of Maryland v. Int'l Bus. Machines Corp.*, CIV. 1:05-CV-0461, 2005 WL 2665326, at *2 (M.D.Pa. Oct. 19, 2005). "If a claim is … one arising from failed economic expectations, i.e. expectations that the product would perform in the manner warranted, then tort recovery is inappropriate." *Id.* (quotation omitted).

The economic loss doctrine usually applies in products liability cases "where one party contracts for a product from another party and the product malfunctions, injuring only the product itself." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 n.11 (3d Cir. 2001); *Air Products & Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F.Supp.2d 329, 335 (E.D.Pa. 2003).

Having defined the gist of the action doctrine and the economic loss doctrine, the Court must now determine their application to the case at hand. Defendant claims that Plaintiffs' UTPCPL claim must be dismissed under the gist of the action doctrine because the crux of Plaintiffs' claim is a contractual dispute and the claim is predicated on Defendant's alleged breach of contract. ECF No. 8 at 17. Similarly, Defendant claims that the economic loss doctrine bars Plaintiffs' UTPCPL claim because Plaintiffs' alleged harm

is monetary. *Id*. In support of its economic loss doctrine argument, Defendant points to *Werinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002) for support. The Defendant correctly notes that the Third Circuit expressly applied the economic loss doctrine to a claim under the UTPCPL in this case. *See id*. at 681. *Werinski*, however, does not govern the instant dispute. In *Werinski*, purchasers of automobiles which allegedly contained defective transmissions that required premature repairs brought a prospective class action in state court against the manufacturer, asserting, *inter alia*, violations under the UTPCPL. The Third Circuit affirmed the district court's dismissal of the UTPCPL claims under the economic loss doctrine. As noted above, the economic loss doctrine is applied frequently in products liability cases, where the product malfunctions, injuring only the product itself. *Werinski* is thus helpful in the analysis at hand in that it establishes that the economic loss doctrine *applies* to UTPCPL claims. It does not, however, conclusively establish that the economic loss doctrine necessarily bars all claims that are brought under the UTPCPL.

In response, Plaintiffs assert that the "essential gravamen" of its UTPCPL claim sounds in tort in that the claim is grounded in the general duty to exercise reasonable care in making representations that could result in reliance. Plaintiffs argue that the UTPCPL claims do not depend on any duty resulting from contractual privity between the parties and that the contract allegations are merely collateral to conduct that is primarily tortious. ECF No. 13 at 17.

The Court concludes that it would be premature to dismiss Plaintiffs' claim under the UTPCPL as barred by either the gist of the action doctrine or the economic loss doctrine. Indeed, in the context of the gist of the action doctrine, "[c]aution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry." *Haymond v. Lundy*, 99-5015, 2000 WL 804432 (E.D.Pa. July 22, 2000), *aff'd sub nom. Lundy v. Hochberg*, 79 Fed.App'x 503 (3d Cir. 2003). *See also CH&H Pennsylvania Properties, Inc. v. Heffernan*, CIV.A. 03-CV-2349, 2003 WL 22006799, at *6 n.6 (E.D.Pa. Aug. 20, 2003) (declining to apply the gist of the action doctrine without an intensive inquiry into the facts); *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F.Supp.2d 545, 567 (D.V.I. 2004) (same); *Mill Run Associates v. Locke Prop. Co., Inc.*, 282 F.Supp.2d 278, 291 (E.D.Pa. 2003) (same). "It is especially inappropriate to dismiss a tort claim as duplicative of a contract claim when the contours of the agreement at issue are not clear." *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F.Supp.2d 545, 567 (D.V.I. 2004) (citations omitted).

Here, the Court already concluded that the Complaint failed to establish the existence of a modification agreement. Further, the contours of the Mortgage and Note between the parties are not clear. It is thus impossible to determine the contours of the parties' agreements at this stage. Given that a fact-intensive inquiry would be necessary to determine whether the gist of the action doctrine or the economic loss doctrine bars Plaintiffs' UTPCPL claim, the Court does not dismiss this claim under these theories at

this time, rather, this issue will be better reviewed pursuant to a summary judgment motion.

### C. Plaintiffs have stated a cause of action under the UTPCPL catchall provision

The Defendant argues that the Plaintiffs' UTPCPL claim should be dismissed for failure to allege the elements of common law fraud. The Defendants assert that alleging all elements of common law fraud, including justifiable reliance, is necessary to state a cause of action under the UTPCPL catchall provision under which Plaintiffs bring their claim. In response, Plaintiffs cite a number of cases that hold that Section 201-2(4)(xxi) does not require proof of common law fraud. ECF No. 13 at 12. Having reviewed the relevant case law, the Court concludes that the cases that previously required plaintiffs to allege all elements of common law fraud to sustain a cause of action under the UTPCPL catchall provision are no longer an accurate articulation of the law in Pennsylvania.

In *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151-53 (Pa. Super. Ct. 2012), the Pennsylvania Superior Court analyzed the statutory provision and case law both before and after the 1996 Amendments to the UTPCPL and concluded that proof of common law fraud is no longer required to state a cause of action under the catchall provision:

> A … reading [of the UTPCPL] that adheres to the common law fraud requirement for cases arising under the post-amendment catchall provision ignores the textual changes of the 1996 amendment as well as the rules of statutory construction … The legislature's inclusion of 'deceptive' in 1996 signaled that either fraudulent **or** deceptive conduct would constitute a catchall violation. The amendment also implied that deceptive conduct is something different from fraudulent conduct … For these reasons, we hold

deceptive conduct which creates a likelihood of confusion or of misunderstanding can constitute a cognizable claim under Section 201-2(4)(xxi).

*Id.* (emphasis in original).

That proof of all elements of common law fraud is not required to state a claim under the catchall provision does not mean, however, that no elements of common law fraud are required to state such a claim. Pennsylvania courts have repeatedly held that proof of justifiable reliance and causation remain elements of a claim under the UTPCPL catchall provision. *See, e.g., Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 501 (2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance), *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008) (noting the Pennsylvania courts' "repeated holdings that to bring a private cause of action under the Consumer Protection Law, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered a harm as a result of that reliance and concluding that the private plaintiffs alleging deceptive conduct under the statute's post-1996 catchall provision were required to allege justifiable reliance) (quotations omitted).

To maintain a private action under the UTPCPL, Plaintiffs are required to allege that they sustained an "ascertainable loss of money or property ... as a result of" the defendant's allegedly deceptive conduct. 73 PA. CONS. STAT. ANN. § 201-9.2; *Williams v. Empire Funding Corp.*, 227 F.R.D. 362, 371 (E.D.Pa. 2005) (a private UTPCPL plaintiff must

allege "that defendant's purportedly unlawful conduct caused a definable loss of money or property").

The Court thus holds that to state a claim under the UTPCPL catchall provision, a plaintiff must allege that (1) the defendant engaged in deceptive or wrongful conduct or made representations which creates a likelihood of confusion or misunderstanding, (2) the plaintiff justifiably relied on the defendant's wrongful conduct or representations, and (3) the plaintiff suffered harm as a result of that reliance.

The Court concludes that the Plaintiffs have stated a cause of action under the UTPCPL catchall provision. Plaintiffs allege in their Complaint that Defendant made misrepresentations to Plaintiffs that Plaintiffs had to be in default to be eligible for a loan modification. ECF No. 2-2 at ¶¶ 3-4. Plaintiffs allege that they relied on this misrepresentation and did not make payments on their mortgage for three months. *Id*. at ¶ 4. Lastly, Plaintiffs allege that they suffered harm as a result of this reliance when a foreclosure action was filed against their home. *Id* at ¶¶ 11-12. The Court thus denies Defendant's motion to dismiss as to Plaintiffs' claim under the UTPCPL catchall provision.

### d. Leave to amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend] when justice so requires." "[A] district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment

would be futile, or (3) the amendment would prejudice the other party." *Frasier v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003), *as amended* (Jan. 20, 2004) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

The Court finds no reason to deny leave to amend in this case. Plaintiffs shall be granted leave to amend their Complaint.

## VI. Conclusion

For the foregoing reasons, the Court holds that Plaintiffs failed to plead sufficient facts to establish their claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. The Court grants Defendant's motion to dismiss with respect to Counts I, II, and III of the Complaint. Plaintiffs are given twenty-one days to amend their Complaint to address the deficiencies outlined above. The Court holds further that Plaintiffs pled sufficient facts to establish a claim for a violation of the UTPCPL catchall provision. The Court thus denies Defendant's motion to dismiss with respect to Count IV of the Complaint.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH G.GEESEY and WENDY GEESEY, | ) ) | CIVIL ACTION NO. 3:14-188 |
| Plaintiffs, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| CITIMORTGAGE, INC., | ) ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this **29th** day of September, 2015, upon consideration of Defendant's Motion to Dismiss (ECF No. 7), and Plaintiffs' response thereto, and in accordance with the foregoing Memorandum Opinion, it is **HEREBY ORDERED** that the Motion to Dismiss is **GRANTED** as to Counts I, II, and III and **DENIED** as to Count IV. Plaintiffs are granted twenty-one (21) days from the date of entry of this Order to amend their Complaint.

BY THE COURT:

_____

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**